IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BEN CAPP, JR., as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, <br> 620 F Street, N.W. <br> Washington, DC  20004 <br> (202) 783-3788, <br><br> BRICKLAYERS AND ALLIED CRAFTWORKERS INTERNATIONAL HEALTH FUND <br> 620 F Street, N.W. <br> Washington, DC  20004 <br> (202) 783-3788, <br><br> INTERNATIONAL MASONRY INSTITUTE <br> 620 F Street, N.W. <br> Washington, DC  20004 <br> (202) 783-3788, <br><br> and <br><br> INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS <br> 620 F Street, N.W. <br> Washington, DC  20004 <br> (202) 783-3788, <br><br> Plaintiffs, <br><br> v. <br><br> ACCENT MASONRY LLC <br> 3700 Phillips Boulevard <br> Moore, OK  73160, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Civil Action No. |

**COMPLAINT**

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION
### Jurisdiction and Venue

1.  This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), to enforce the terms of the Plan and Trust Agreements adopted by the IPF and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the Labor Management Relations Act ("LMRA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145, and Section 301 of the LMRA, 29 U.S.C. § 185. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF, the Bricklayers & Allied Craftworkers International Health Fund ("IHF"), and the International Masonry Institute ("IMI"). As to the claims brought on behalf of the International Union of Bricklayers and Allied Craftworkers ("BAC"), jurisdiction is conferred under Section 301(c) of the LMRA, 29 U.S.C. § 185(c).

2.  The IPF, IHF, and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF, IHF, and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2200228.01

BAC maintains its principle office in the District of Columbia. Venue for the claims asserted by the BAC is therefore conferred on this Court pursuant to Section 301(c)(1) of the LMRA, 29 U.S.C. § 185(c)(1).

## Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF is also authorized to effect collections on behalf of the IHF, IMI and BAC, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.      Plaintiff, IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

6.      Plaintiff, IMI, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

7.      Plaintiff, BAC, an unincorporated association, is a labor organization within the meaning of 29 U.S.C. § 152(5) and is entitled to bring suit under 29 U.S.C. § 185.

8.      Defendant, Accent Masonry LLC is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Oklahoma.

3

9.     Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

10.     Accent Masonry LLC acting through its authorized agent or officer, executed a collective bargaining agreement with the Union.  That collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement".

11.     Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF, IHF, IMI, and BAC on behalf of covered employees of Defendant.

12.     Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

13.     Upon information and belief, Defendants have failed to properly submit required reports and contributions for hours worked pursuant to the Agreement.

14.     Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine any amounts which may be owed for work covered by the Agreement.

15.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

16.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either an additional computation of interest calculated at 15 per cent per annum or liquidated damages at 20 percent, on the aforementioned delinquent contributions.

4

17.     Despite several requests by the IPF, or a representative of the IPF, for access to Defendant's books and records so that the IPF auditor can determine whether contributions have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to their books and records.

18.     Accordingly, Plaintiffs have been forced to estimate the amounts due the IPF, IHF, IMI and BAC by Defendant.

19.     The total of estimated contributions due the IPF, IHF, and IMI by Defendant for work performed during the months of March 2006 through December 2006 amounts to $66,817.35.

20.     Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI, interest in the amount of $3,860.39 calculated from the Due Date at the rate of 15 percent per annum and liquidated damages in the amount of $10,825.58 at 20 percent as provided for by ERISA, have been assessed on the estimated delinquent contributions payable to the IPF, IHF, and IMI for work performed by Defendant's employees during the time period March 2006 through December 2006.

21.     Defendant is also estimated to owe the BAC dues checkoff moneys in the amount of $392.24, and interest in the amount of $22.45, for work performed by Defendant's employees during the time period March 2006 through December 2006.

22.     To date the delinquent contributions, interest and statutory damages believed due and owing have not been paid.

23.     Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs

2200228.01

have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For an order directing Defendant Accent Masonry LLC to turn over to Plaintiffs' auditor its books and records for the time period April 2005 through the present including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

Plaintiffs seek an order granting it:

    a.  Preliminary injunctive relief and

    b.  Permanent injunctive relief.

2.  For any additional amounts determined owed the IPF, IHF, IMI and BAC by Defendant, which are not yet ascertainable until an audit is conducted.

3.  For the total amount of $82,268.01, which is constituted as follows:

    a.  for estimated delinquent contributions in the amount of $66,817.35 due in connection with work performed by Defendant's employees during the months of March 2006 through December 2006 (ERISA Section 502(g)(2)(A));

    b.  for interest in the amount of $3,860.39 on such estimated delinquent contributions calculated at the rate of 15 percent per annum from the Due Date. (ERISA Section 502(g)(2)(B));

    c.  for liquidated damages in the amount of $10,825.58 at the rate of 20 percent assessed on such estimated delinquent contributions. (ERISA Section 502(g)(2)(C));

2200228.01

d.  for estimated dues checkoff in the amount of $392.24 due in connection with work performed by Defendant's employees during the months of March 2006 through December 2006, and interest in the amount of $22.45 on such estimated delinquent dues checkoff.  (CCU Procedures);

e.  for the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D)).

4.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

5.  That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF, IHF, IMI, and BAC all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

6.  Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: January 25, 2007

By: _____
Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO  LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorneys for Plaintiffs

7

2200228.01

OK0307D

# BRICKLAYERS AND ALLIED CRAFTWORKERS
## LOCAL #5 OF OKLAHOMA/ARKANSAS

This agreement is entered into this _____ 1st___ day of ____June_____, 2003__, by and between _____ (hereinafter referred to as the Employer), and the International Union Of Bricklayers and Allied Craftworkers Local No. 5 OK/AR_____, of (hereinafter referred to as the Union).

## ARTICLE I
### DURATION - TERMINATION - AMENDMENT

This agreement shall be effective commencing _____June 1, 2003__, and shall continue in full force to and including _____May 31, 2006__, and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement. In whole or in part, is given in writing by either party to the other not later than sixty (60) days no more than one hundred eighty (180) days prior to the expiration date or any anniversary date thereafter. It is also recommended by both parties to schedule labor management meetings one year prior to the expiration date of this Agreement. If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of this Agreement.

## ARTICLE II
### SCOPE OF WORK

A.    This Agreement shall cover new construction, maintenance, repair and renovation with all counties or portions thereof in the state of Oklahoma.

B.    This Agreement shall cover all Brick Masonry, Stone Masonry, Artificial Masonry work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

In addition, all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that is determined by these parties to fall within the work jurisdiction of this Agreement.

In the event of territorial jurisdiction or work assignment dispute with any other BAC Local Union, the matter shall be referred to the International Union for binding resolution.

RECEIVED
MAY 12 2003
COLLECTIVE BARGAINING SERVICES

-1-



C.    All cork, Styrofoam, foam glass, fiberglass, or any other substitute when applied with mortar, cement, mastic of any type pitch, tar or any material used to stick the insulation is to be the work of members of Bricklayers and Allied Crafts. All marble and marble masons shall be covered in this Agreement. All split brick 1 1/4" and over in thickness shall be bricklayers' work.

### ARTICLE III
### MOST FAVORED NATIONS CLAUSE

A.    The union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the masonry market or certain geographic areas, those same terms and conditions of employment will be made available to the Employer on the specified projects, particular segments of the masonry market or in those geographic areas covered. The only exception to this provision is those initial Agreements that are signed with newly organized employers to provide a bridge between those rates which are initially established and those which prevail for signatory contractors in the masonry market in which the newly organized contractor is going to operate.

B.    In the event that any question arises as to the meaning and application of this provision, either party may file with the other a written complaint. Such complaint will be initiated at Paragraph C of the grievance procedure set forth in Article XIX. of this Agreement (referred to Joint Arbitration Board), and shall be processed in accordance with the procedure for the handling of grievances and the final and binding arbitration of disputes.

### ARTICLE IV
### UNION RECOGNITION, UNION SECURITY, ACCESS

A.    Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the Employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union.

B.    No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their Employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. failure of any employee to comply with provisions of this subsection shall, upon request of the Union, result in termination of such employee, provided that the Union has given the employee four (4) days notice that his obligation to make payment has not been met and that his delinquency renders him liable to

-2-

termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union: (a) If he has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) If he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C.    International Union Representatives and the President/Financial Secretary and Field Representatives of the Union shall have access to the Employer's job sites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with the job progress.

## ARTICLE V
### HIRING PREFERENCE

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the Employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.

## ARTICLE VI
### STEWARDS

The Employer shall work a steward appointed by the President/Financial Secretary or Field Representative of the Union on all jobs or the steward may be elected by the members of this Union who is working on said job. The steward shall be a working employee and shall when appropriate be granted reasonable time to conduct Union business.

## ARTICLE VII
### APPRENTICES

In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or apprentice improvers is recognized and encouraged by the parties to this Agreement. It is agreed that the Employer shall abide by the National apprenticeship Standards developed for masonry craft training and the State of Oklahoma/Arkansas Trowel Trades Apprenticeship standards.

**OK  0307**

# ARTICLE VIII
## TRAVELING CONTRACTORS

A.   When the Employer has any work specified in Article II. of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of this Agreement in effect in the jobsite area except as specified in paragraph D below. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article IX. of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite Local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article II. of this Agreement, the full terms and conditions of this Agreement shall apply.

2.   When the Employer has any work covered by this Article, the Employer shall notify BAC Local 5 Oklahoma/Arkansas and the Local Union having jobsite jurisdiction within forty-eight (48) hours of being awarded a contract for a project. Further the Employer shall contact the jobsite Local Union and schedule a pre-job meeting, or, if appropriate, a telephone conference to be held at least twenty days (20) prior to commencing work to discuss labor requirements for the project.

3.   If the Employer has difficulty contacting the jobsite Local Union, or, if the jobsite Local Union is unable to refer the skilled employees required for the project. The Employer shall send a FAX outlining the labor required for the project to the office of BAC Local 5 Oklahoma/Arkansas at least twenty days (20) prior to beginning any work on the project.

4.   The parties agree that if the jobsite Local Union, or BAC 5 Oklahoma/Arkansas are unable within seventy-two (72) hours of a request, excluding weekends and holidays, to refer the skilled employees required for the project, this Article is not applicable to that project. The only exceptions are employees sent by the Union from any jurisdiction, then full terms and conditions apply to said Employee's only.

**OK 0307**

-4-

OK 0307

5-13-03

## ARTICLE IX
## BRICKLAYER WAGES/BENEFITS (OKLAHOMA STATEWIDE)
### Journeyperson/Apprentices

| Effective Date | June 1, 2003 | June 1, 2004 | June 1, 2005 |
|---|---|---|---|
| Base Wage | 20.16 | 20.41 | 20.66 |
| Health & Welfare | 4.20 | 4.20 | 4.20 |
| Pension | 1.50 | 1.50 | 1.50 |
| Annuity | .75 | 1.45 | 2.30 |
| IMI | .34 | .39 | .44 |
| Apprentice | .05 | .05 | .05 |
| TOTAL PACKAGE | 27.00 | 28.00 | 29.15 |

AØ

**Schedule of Base Rates for Apprentices are calculated at percentages of a Journeypersons Base Rate

1ST 6 months------------50%    2nd 6 months------------------------60%

3rd 6 months------------70%    4th 6 months------------------------80%

5th 6 months------------90%    6th 6 months------------------------95%

## TAXABLE DEDUCTIONS
### Journeyperson/Apprentices

*I.U. Dues checkoff is equivalent to 1% of Total Pkg.  *Local Dues Checkoff i equivalent to 1.5% of Total Pkg.

**Taxable Deductions** to be deducted from the **Base Wage** by the Employer for eac Hour or portion thereof for which a covered Employee receives pay are a follows:

**EFFECTIVE JUNE 1, 2003**          **EFFECTIVE JUNE 1, 2004**          EFFECTIVE JU
1, 2005

Vacation Fund __1.00__ Per Hour      Vacation Fund _1.00_ Per Hour        VacationFund __1.00_ Per Hour
I.U. Dues Checkoff_.27__ Per Hour    I.U. Dues Checkoff_.28_ Per Hour     I.U. Dues Checkoff _.29 Per Hour

-5-

Local Dues Checkoff 41  Per Hour      Local Dues Checkoff 42  Per Hour     Local Dues Checkoff 44 Per Hour

A.    This agreement encompasses all of the Counties in Oklahoma. The hourly wage rates for all employees performing work covered under this Agreement are specified in Article IX page five (5).

B.    The Union shall have the option of allocating a portion of all of the increases in wage rates for the periods beginning (first anniversary) and (second anniversary) among the various benefit funds specified in Article X.

C.    The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to checkoff.  The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

## ARTICLE X
## JOINTLY TRUSTEED FUNDS

**Section L**    In addition to the wages and other payments herein provided for, the Employer agrees to pay the specified contributions to the following designated funds.

A.    **Bricklayers and Trowel Trades International Pension Fund.**

1.    The contribution to the Bricklayers and Trowel Trades International Pension fund (IPF) shall be a total of ( $1.50 ) for each hour or portion thereof, for which a covered employee receives pay.

2.    The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

B.    **Bricklayers and Allied Craftworkers International Health Fund**

1.    The contribution to the Bricklayers and Allied Craftworkers International Union Local 5 of Oklahoma/Arkansas Health and Welfare Plan (or successor Health & Welfare Plan designated by the Union) shall be a total of (refer to Article IX Wages/Benefits) for each hour or portion thereof, for which a covered employee receives pay.

2.    The payments required above shall be made to the Bricklayers and Allied Craftworkers International Union Local 5 of Oklahoma/Arkansas Health and Welfare Plan, which was established under and Agreement and Declaration of

-6-

OK  0307

Trust, dated August 5, 1971, (or successor Health and Welfare Plan designated by the Union).

## Vacation Fund

C.   **Bricklayers Int'l Union No. 5 of Oklahoma /Arkansas Vacation Trust Fund**

1.   The contribution to the Bricklayers International Union No. 5 of Oklahoma/Arkansas Vacation Trust Fund shall be a total of (Refer to Article IX Wages/Benefits) for each hour or portion thereof, for which a covered employee receives pay.

2.   The Employer agrees that this Vacation Fund contribution shall be deducted from the covered employees' wages after all tax deductions have been made.

3.   The payments required above shall be made to the Bricklayers International Union No. 5 of Oklahoma/Arkansas Vacation Trust Fund, which was established under and Agreement and Declaration of Trust, dated July 18, 1985.

   **NOTE:** The above referenced Local Trust documents as currently written specify composition of committees and full fiducial responsibility of trustees to each Local Trust fund with the exception of the name change of all the aforementioned local Trust funds which shall be "Bricklayers International Union No. 5 of Oklahoma/Arkansas" shall remain in tact and unaltered unless done by Trustees to said funds.

D.   **Annuity**

   The Employer hereby agrees to participate in BAC SAVE - The Bricklayers and Trowel Trades International Retirement Savings Plan (the Plan) on behalf of all employees represented for purposes of collective bargaining under this Agreement and other employees as permitted under the Plan. The contribution to the Bricklayers and Trowel Trades International Retirement Savings Plan(Annuity) shall be a total of (Refer to Article IX Wages/Benefits) for each hour or portion thereof, for which a covered Employee receives pay. The Employer will forward the hourly contributions to International Trowel Trades Fringe Benefit Funds or its successor at such time, and in such form and manner as required pursuant to the Plan and Declaration of Trust and the requirements of law.

E.   **International Masonry Institute**

1.   The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating

-7-

**OK  0307**

activities in these program areas in an effective manner and coordinating them through a single regional/international system.

2.   In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining, contributions equal to three (3) percent of total hourly wage and benefits package; however, this figure is a goal that can only be reached in stages over a period of time.

3.   As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training and labor/management relations programs directed specifically to this area.

4.   In this Agreement, the parties intend to take a first step toward the overall objective by establishing a realistic level of support for IMI. With these principles in mind, the parties agree as follows:

(A)   Effective June 1, 2003 the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wages/Benefits) for each hour, or portion thereof, for which a covered employee receives pay.

(B)   Effective June 1, 2004 the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wages/Benefits) for each hour, or portion thereof, for which a covered employee receives pay.

(C)   Effective June 1, 2005 the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wages/Benefits) for each hour, or portion thereof, for which a covered employee receives pay.

**Section 2.**   The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trusts.

**Section 3.**   The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

**Section 4.**   For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

**Section 5.**   Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen and apprentices.

**Section 6.**   All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the

-8-

OK  0307

accuracy of contributions to the funds designated in Section of this Article. Any employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audits.

Section 7.    Contributions due under this Article are due on the 15th day of the month following the month in which the work was performed. Any contribution and/or reports not received by the 15th day of the month following the month in which the work was performed, shall be deemed delinquent. Fifteen (15) days after the date payments become delinquent, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, and any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of payments due together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

The Union or the Trustees shall have the right to demand payment of contributions specified in this Article from the bond posted by the Employer pursuant to this Article thirty (30) days after said contributions are delinquent. By demanding payment from said bond, the Union and the Trust Funds do not waive any other rights at law for collection of delinquent contribution including but not limited to the right to file a material men and mechanics liens for the payment of such delinquent contributions.

ction 8.    The Employer and the Union shall both use their best efforts to accommodate covered Employees working outside the jurisdiction of the Employees Local Union who wish any fringe benefits paid to be reciprocated to the Employee's designated Home Fund.

        F.    **Oklahoma/Arkansas State Trowel Trades Joint Apprenticeship Fund**

        1.    The contribution to the Oklahoma/Arkansas State Trowel Trades Joint Apprenticeship Fund shall be a total of (Refer to Article IX. Wages/Benefits) for each hour or portion thereof, for which a covered employee receives pay.

        2.    The payments required above shall be made to the Oklahoma/Arkansas State Trowel Trades Joint Apprenticeship Fund, which will be established under an Agreement and Declaration of Trust, dated June 1, 1994.

        G.    **Bonding**

        Employers party to this Agreement shall furnish, for the term of this Agreement, an approved irrevocable letter of credit from a FDIC bank or a performance and payment bond in approved form and either shall be in the sum of $20,000.00, payable to the International Pension Fund. The bond (or alternatively an irrevocable letter of credit) shall be furnished within five (5) working days upon becoming signatory to this Collective Bargaining Agreement with a duly qualified bonding company to secure payment of all fringe benefits due and owing under the provisions of this Agreement. Any bond shall also provide that the bonding company shall serve thirty (30) days written notice before cancellation of said bond to the International Pension Fund. The bond (or alternatively an irrevocable letter of credit) will be held in the International Pension Fund Administrative Fund Office.

OK 030

# ARTICLE XI
## HOURS OF WORK, PAY PERIOD, OVERTIME, SHIFTS, AND HOLIDAYS

**Section 1.**     The standard work day shall consist of eight (8) hours of work between the hours of 8:00 a.m. and 4:30 p.m., with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard work week shall consist of five standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

**Section 2.**     All employees working under this Agreement shall be paid in cash or by check weekly before quitting time within five working days after the closing of the pay for the pay week. An employee being laid off shall be given his final paycheck in full for all hours of employment at the end of his/her work shift.

**Section 3.**     All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid for at the rate of 1 ½ times the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of this Article shall be paid for at the rate of double the hourly base wage rate in effect.

**Section 4.**     The parties to this Agreement recognize the desirability and in some cases absolute necessity of coordinating the shifts to be worked with the other trades involved on the project and the customer's work schedule. The schedule of approved shifts which can be adopted by mutual consent of the Employer and the President/Financial Secretary of the jobsite Local Union as Section 8 of Article XI.

**Section 5.**     Holiday work performed on Sunday and the following holidays; **Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas, and New Years Day** shall be paid at the rate of **Double Time.** If the holiday falls on Saturday, then the Previous Friday and the holiday will be observed as the holiday, and if the holiday falls on Sunday, then the following Monday and the holiday will be observed as the holiday. At no time can holidays be made up as straight time or the rate of 1 ½ times the hourly base wage rate in effect.

**Section 6.**     **Make-Up Days:** In the event employees working under this Agreement lost six (6) or more hours of work during the work week due to inclement weather, the Employer may, at his option, schedule a make-up day on Saturday (or Friday if the project is scheduled on a four (4) ten (10) hour day work week). The make-up work day shall be considered identical in start and stop times as the regular work day. It is agreed that any make-up day work will be made available to the job site employees first. Employer will not discharge or discriminate against any regular employee who declines to work on a make-up day, as it shall be voluntary to all Employees. In no event shall the Employer attempt to circumvent the overtime provisions of this Agreement by employing supplemental labor for Saturday work.

**Section 7.**     The Employer may elect to schedule work on four (4) ten (10) hour work days per work week. Changes in the work hours, other than those provided above, in special cases, may be made to meet special conditions upon application to the Local Union President/Financial Secretary.

OK   0307

**Section 8.    Shift Work:**  Where there are relay gangs of two or three shifts in twenty-four (24) successive hours, straight time shall be applicable, excepting Saturday, which shall be covered By Section 3 (overtime work) (Saturday) and all Sundays and holidays shall be paid at the rate of DOUBLE TIME.  When two (2) shifts are engaged, the first shall work eight hours for eight hours pay (regular), and the second shall work seven hours for eight hours pay.  When three shifts are engaged, the first shift shall work eight hours at regular pay, and the 2nd and 3rd shifts shall draw eight hours pay for seven hours work.  No member will be allowed to work over eight hours in a twenty-four hour period unless he draws overtime after the first 8 hours work, as detailed in Section 3.

**ARTICLE XII**
**PAY DAY**

**A.**    Employees shall not be made to suffer the loss of time occasioned by the erection or stocking of scaffolds or by moving from one job to another job, during work hours.

**B.**    Employees shall be paid before quitting time on Friday of each week and should an employee not receive their pay on the designated pay day, at the specified time, no further work will be permitted, until all members are paid.  Also, after regular work hours, overtime will be paid while waiting for pay on the job.

**C.**    Pay day will be each week, with no more than five (5) working days hold back.

**D.**    It is further agreed that all employees covered by this Agreement, shall be furnished on pay day, a check stub, pay envelope or receipt listing the date, Employer's Name, deductions for social security, withheld taxes, and number of hours represented by the check, also gross and net amount due, plus any other deductions from wages, required by law.

**E.**    When an Employee is discharged, he shall be paid at once.

**F.**    The Foreman shall notify the men by 10:00 a.m. as to whether or not they are going to work, when weather conditions are questionable.  The employees will furnish the Superintendent or Foreman their phone number, so that the Foreman is able to inform them of the starting time.

**ARTICLE XIII**
**WORKING CONDITIONS**

1.    Employees will not be required to build walls over four 4'8" in height except where there is overhead obstructions.

2.    Employees will not be required to reach over thirty-two (32) inches above their feet for mortar and not over sixty (60) inches in height for other materials.  A ladder shall be provided by the Employer for the convenience of employees to reach the place they are working whether above or below ground.  A ladder will be provided for every one hundred (100) feet of horizontal scaffold and shall extend at least three (3) feet above floor or scaffold.  It shall be securely tied to scaffold and remain in place as long as a member is working thereon.

-11-

**OK 0307**

 

3.  Employees will not be required to reach down a distance more than approximately twelve (12) inches to veneer steel or concrete beams.

4.  No scaffold board shall be used under the size of 2 x 10 inches. Three (3) 2 x 10 and 3/4 inch plywood or three (3) 4 x 4 and 3/4 inch plywood is permissible.

5.  Mortar boards shall be blocked or set on stands at least sixteen (16) inches above scaffold floor.

6.  SAWS: All masonry saws shall have belt and blade guards, and wet and dry saws shall be grounded in accordance with Safety requirements. On all wet saws the Employer shall furnish elbow length gloves and aprons.

7.  Employees will be given a ten (10) minute break at mid-morning and another ten (10) minute break at mid-afternoon. The steward will help the Foreman to see that this section is strictly adhered to. The break shall be taken at or near the work place with refreshments being brought to the work site by the employee at the beginning of the work day. No one shall leave the work site during their break. In the event that breaks are being abused, the steward or Foreman shall notify the Local office to discontinue breaks on that one particular project.

8.  Where dry saws are operated inside or outside a building in a manner that the dust from it would be injurious to the health of the operator or other employees, a blower fan or dust collector or filtered dust mask shall be provided by the Employer.

9.  The laying of blocks or units weighing over forty (40) pounds may be laid by employees working pairs.

10. A sanitary and suitable toilet shall be provided at all jobs by the Employer. On jobs where the plumbing is tied onto the city sewage, a commode with running water shall be provided or portable toilet.

11. Good, clean drinking water shall be provided at all times and served from a closed container. Ice shall be put into the water during warm weather. Sanitary drinking cups shall be furnished at all times.

12. There shall be no prescribed rule or order or limitation by either Bricklayer or Employer as to the amount or number of bricks, tile, block or any masonry material to be laid in any given time.

13. No employee shall put mortar on masonry wall except a member of this Union.

14. Straight walls shall be laid to a line, and on jobs where specifications require slushing the line is not considered laid out until slushing is finished.

15. When job conditions merit a tool shed, it shall be provided.

**OK 0307**

-12-



16. Any employer employing more than three (3) mason and doing work in this jurisdiction shall employ at least fifty (50) per cent members of this Local Union if local members are available.

17. In case of fire or theft on a job at any time the Employer shall not be responsible for the loss of mechanics tools and clothing lost by such fire or theft.

18. The men setting the twig must set twig while other bricklayers are striking and/or walling masonry.

19. The wages, hours and conditions of employment contained in the collective bargaining contracts of the Local Union, shall constitute its working rules and regulations.

20. Members will be provided with a face mask by the Employer when pouring insulation such as peralite, zonalite, etc.

21. Proper lighting will be provided, for members to see to do their work properly, at all times by the Employer.

22. Each member must report all violations of the working rules and regulations, of which he is aware to the steward on the job or to the Business Agent or to the Local's Business office.

## ARTICLE XIV
### SCAFFOLDING AND MECHANICAL DEVICES

1. All swinging scaffolds used for the laying of masonry shall have at least one half (½) inch cables, shall be at least four (4) feet wide and have proper guard rails. When overhead protection is required for safety, it shall be eight (8) feet maximum height above the scaffold platform, with not less than two (2) inch planking and shall not be under four (4) feet wide. The overhead protection shall be a part of the swinging scaffold. Any work being performed above the outrigging of the scaffold shall require additional protection by planking the outrigging, as far out as is possible.

2. Corner poles may be used on masonry over studs or veneering of existing materials. When irregular materials are used that might warrant the use of corner poles, permission must be granted by the Local Union.

3. No scaffold deck shall be farther away from the wall than approximately four (4) inches. Where projections or pilasters occur which would cause the scaffold to exceed four inches, the scaffold must be built around the obstructions.

4. In the use of scaffold, the manufacturers recommendations and safety requirements shall be followed. All of the above must meet OSHA regulations and OSHA regulations will govern.

### ARTICLE XV          ⁻OK 0307

-13-

 

## THE DUTIES OF THE STEWARD ON THE JOB SITE

1.  To inspect dues books, receipts for initiation fees and travel service dues.

2.  To report violations of the working rules, Collective Bargaining Agreement, unsafe job conditions and other job site disputes to the Foreman or Superintendent, President/Financial Secretary if the condition or violation is not corrected or if the dispute is not promptly resolved.

3.  To assist any injured member in receiving proper and immediate care.

4.  To report to the President/Financial Secretary or Field Representatives any work assignments falling within the jurisdiction of this Local Union made to employees represented by another trade Union or Labor organization.

5.  If the Steward is unable to promptly resolve a problem at the job site, he shall contact the President/Financial Secretary as soon as possible. He shall not have the authority to order a work stoppage or interruption in the work progress.

6.  Any member who wishes the Union to process a grievance from him against an Employer, must present his grievance in writing to the President/Financial Secretary of the Local Union within seventy-two (72) hours of the time of the event about which he is complaining or as provided in the Local Union's Collective Bargaining Agreement.

7.  In no case shall a Steward be discharged, laid off or fired because of the manner of performance of his duties as a Steward.

8.  Stewards shall not be transferred from one job to another unless the President/Financial Secretary agrees to the transfer.

## ARTICLE XVI
### RESPONSIBILITY OF MEMBERSHIP

All members of other Local Unions affiliated with the Bricklayers and Allied Craftworkers International Union who are working within the jurisdiction of this Local Union must notify this Union of jobs on which they are employed.

## ARTICLE XVII
### REGULATING OF APPRENTICES

A.    Apprentices shall be governed by the apprentice standards as approved by the Oklahoma/Arkansas State Trowel Trades Joint Apprenticeship Committee.

B.    All employees must strike up and rake out their own work. The apprentice may perform this work, but in no case will he be permitted or required to rake out or strike up work done by other employees.

C.    The Local Union upon the authority vested to it by the Oklahoma/Arkansas State Trowel Trades Joint Apprenticeship Committee shall have the authority to place apprentices on the jobs

-14-



at the following ratio: first apprentice to one journeyman and thereafter, one apprentice to every one journeyman.

## ARTICLE XIII
## FOREMEN

A.　The salary of the Foreman shall be one extra hours pay per day.

B.　On all jobs the Foreman shall be a Journeyman member of the International Union of Bricklayers and Allied Craftsmen and the same branch of Trade, as the members he is Foreman over.

C.　On all jobs where two (2) or more members are working, one (1) must be designated as Foreman and receive Foremans pay.

D.　The foreman must notify this Local Union's office a minimum of eight (8) hours prior to the commencement of a job, stating job location, Contractor's Name and Job Phone Number, on those jobs lasting over three (3) days' duration.

E.　No member working in the capacity of Foreman may violate, or cause, or attempt to cause any employee to violate any provision of the bargaining agreement or any provision of this constitution or the International Constitution.

## ARTICLE XIX
## GRIEVANCE PROCEDURE

A.　The parties to this Agreement shall establish a Joint Arbitration Board consisting of two representatives selected by the Contractors and two representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The Board shall meet at least once a month, or on call, to settle complaints, abuses or grievances. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board. The Employer and Union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

B.　It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

C.　Grievances shall be handled in the following manner:

**OK 0307**

-15-

1. The grievance shall be referred to the jobsite Union steward and to the foreman for adjustment.

2. If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the Business Manager of the Union and the Employer.

3. If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within 48 hours to the Joint Arbitration Board for consideration and settlement.

4. If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working days, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel or arbitrators submitted by and in accordance with the rules and regulations of the Federal Mediation and Conciliation Service. All expenses of the Impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

D.    When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provides, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent-setting.

E.    The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. However, failure to process a grievance, or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice, and shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

**ARTICLE XX**
**SUBCONTRACTING**

A.    The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

B.    All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

-16-

**OK 0307**

## ARTICLE XXI
### PRESERVATION OF WORK (ANTI - DOUBLE BREASTING)

**A.**    In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows:  If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

**B.**    All charges of violations of Section A of this Article  shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XIX of this Agreement.  As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XIX is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law.  Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

**C.**    If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an aware rendered in accordance with Section B above, or to defend an action which seeks to vacate such aware, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

### ARTICLE XXII
### NO - STRIKE/NO - LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XIX have been exhausted and then only in the event a party fails or refuses to abide by a final decision.  this Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.

### ARTICLE XXIII
### SEPARABILITY AND SAVINGS PROVISIONS

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules, and regulations made pursuant thereto.  If any provision of this Agreement is held

-17-

OK  0307



invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this agreement shall remain in force and effect. In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate Collective Bargaining Negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law to be in effect during the period of invalidity or restraint.

## ARTICLE XXIV
### SAFETY

**A.    SAFETY:**

1.    The Union and the Employer agree that safety of the workplace is of paramount importance and the Employer and the Union agree to abide by all appropriate federal, state and local safety laws and regulations and any and all safety regulations established by an owner or his representative at a particular jobsite.

**B.    SAFETY AND HEALTH:**

1.    The employer suggests, and the Union totally agrees, that as soon as practical a Joint Safety Committee shall be established to educate members in the following: First aid as applicable to job site, safety in the work area, hazardous materials on masonry jobs, proper scaffold erection and safer work habits.

**C.    DRUG TESTING:**

1.    Employees shall not use, possess or have in their system alcohol or illegal drugs (as defined by Oklahoma Statutes) at any time during the workday or anywhere on the Employer's workplace. Violators will be subject to immediate discharge and, when any testing is required by the Employer, the testing program shall at all times, comply with the Oklahoma Standards for Workplace Drug and Alcohol Testing Act and any Amendments thereto (40 Okla. Stat. §551 et seq.)

2.    When testing is required by the Employer, employees shall be paid for the time necessary to take the test provided that the results of the Employee's tests are negative. No time shall be paid to an employee whose test results are positive.

3.    The Employer, and not the Union, shall be responsible for any loss, suits, actions or claims of any character by any Employee or group of Employees covered under this Agreement arising from drug, alcohol or substance impairment testing practices set forth herein.

## ARTICLE XXV
### GENERAL UNDERSTANDING

The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged. It will at all times meet and confer with the Employer, and

-18-

similarly, the Employer will at all times meet with the Union respecting any questions of misunderstandings that may arise under the performance of this Agreement.

This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

The Employer agrees that if it has not previously done so, it will, upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntarily recognize the Union as the exclusive representative as defined in Section 9 (a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future job sites within the jurisdiction of the Union. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

OK 0307

We the undersigned Employer on behalf of the parent firm, all subsidiaries and corporate related firms, companies and/or corporations hereby become signatory to this Agreement and agree to abide by the full terms and conditions of this Agreement effective as of this date.

Signed this _____ day of _____, _____

FOR THE EMPLOYER                    FOR THE UNION

_____           President/Sec-Treas.
Company Name                        Int'l Union of B.A.C
                                    Local Union No. 5 of
                                    Oklahoma/Arkansas
_____
Address

City, State and Zip Code

Phone

Fax

By
Name

Title

OK 0307

-20-

To: Sheree            202 | 638-5274        2-18-05

We the undersigned Employer on behalf of the parent firm, all subsidiaries and corporate related firms, companies and/or corporations hereby become signatory to this Agreement and agree to abide by the full terms and conditions of this Agreement effective as of this date.

Signed this _____/_____ day of _____April_____, _2005_

FOR THE EMPLOYER                           FOR THE UNION

                                            _____
                                            President/Sec-Treas.
_ACCENT MASONRY_                            Int'l Union of B.A.C
Company Name                                Local Union No. 5 of
                                            Oklahoma/Arkansas
_3700 PHILLIPS_
Address

_MOORE OK  73160_
City, State and Zip Code

_405-794-4933_
Phone

_____
Fax

By _Tom Barrett  Dale Wells_
Name

_OWNER_
Title


OK Brick

-20-

23

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN FLYNN, et al.  11001 | ACCENT MASONRY LLC |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

CASE NUMBER 1:07CV00183

JUDGE: Rosemary M. Collyer

DECK TYPE: Labor/ERISA (non-employe

DATE STAMP: 01/  /2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENS
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/ Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ **C. Administrative Agency Review**
  - ☐ 151 Medicare Act

  Social Security:
  - ☐ 861 HIA (1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)

  Other Statutes
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- ○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ◎ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◎ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ _____<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE _1-25-07_    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# RECEIVED

JAN 25 2007

NANCY MAYER WHITTINGTON, **CLERK**
U.S. DISTRICT COURT